**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | |
|---|---|
| **IN RE:** ) | |
| ) | **CHAPTER 11** |
| **COAL RIVER RESOURCES, INC.,** ) | |
| **ET AL.,** ) | |
| ) | **CASE NO. 7-04-00988-WSB-11** |
| **DEBTORS.** ) | **(Jointly Administered)** |
| ) | |

| | |
|---|---|
| **EULER HERMES ACI,** ) | |
| ) | |
| **PLAINTIFF,** ) | **ADVERSARY PROCEEDING** |
| ) | **NO. 04-07146** |
| **v.** ) | |
| ) | |
| **COAL RIVER RESOURCES, INC.,** ) | |
| **HOLLOW MOUNTAIN RESOURCES, INC.,** ) | |
| **STEVEN R. MULLINS EXCAVATING, INC.,** ) | |
| **TRI-STATE LEASING CORPORATION,** ) | |
| **STEVEN R. MULLINS, an individual** ) | |
| ) | |
| **DEFENDANTS.** ) | |
| ) | |

**MEMORANDUM DECISION**

This adversary proceeding was filed by Euler Hermes ACI ("Euler Hermes") as a complaint to determine the validity, extent and priority of liens on certain property claimed to be held by the plaintiff by virtue of purported materialman's and workman's liens against defendants Coal River Resources, Inc. ("Coal River"), and Hollow Mountain Resources, Inc. ("Hollow Mountain"). Each of the corporate defendants has filed separate dispositive motions seeking either dismissal or judgment on one or all of the three counts of the complaint. A hearing on the

1

matter was held March 21, 2005 at which time the Court heard oral argument from the parties. Parties were given time to brief the issue and the matter is now ready for decision. For the reasons stated below, the Court will grant in part and deny in part the various motions before the Court as more particularly noted hereafter.

## FINDINGS OF FACT

On March 8, 2004 (the "Petition Date") four interrelated corporations, Coal River Resources, Inc., Hollow Mountain Resources, Inc., Tri-State Leasing Corp. ("Tri-State"), and Steven R. Mullins Excavating, Inc. ("SRM") filed Chapter 11 petitions in this Court. Steven R. Mullins is the President, Chief Executive Officer, and sole shareholder of each of these companies. Coal River Resources is a mineral sub-lessee of approximately 12,000 acres in Boone County, West Virginia. Hollow Mountain Resources operates as a contract operator, mining the coal on the site. Coal River Resources is responsible for paying the sub-lessor and all taxes, and it then pays 96% of the remaining amount to Hollow Mountain Resources, keeping 4% for itself for purposes of engineering and exploration costs. Hollow Mountain Resources rents its equipment from both Tri-State and SRM, paying both companies monthly rental fees. Due to the interrelationship of these companies and consequently these bankruptcy cases, upon motion of the Debtors and after a hearing thereon the Court entered an order on April 6, 2004 directing joint administration of the cases.

It is undisputed that Petroleum Products Corporation ("PPI") was a supplier for Hollow Mountain at its Boone County, West Virginia operations at various times commencing

prior to the Petition Date and continuing until on or about February 11, 2004.[1]  Hollow Mountain and its affiliated debtors filed their Chapter 11 petitions in this Court on March 8, 2004.  Euler Hermes alleges that the supplies provided by PPI were utilized in connection with construction, alteration and maintenance of improvements made by Hollow Mountain on property owned or leased by Coal River and constituted work performed for an incorporated company in the State of West Virginia, but this allegation is denied by both Hollow Mountain and Mr. Mullins in their respective answers.  It is undisputed, however, that Hollow Mountain is indebted to PPI for the supplies provided prior to the Petition Date in the amount of $167,476.90.  The Complaint alleges that "the Debtors" are indebted to PPI and while Hollow Mountain admits this allegation, Tri-State denies that it is indebted to PPI and Mr. Mullins only admits that Hollow Mountain is indebted to PPI on this debt. PPI filed with this Court a Notice of Lien Perfection for Filing of Notice and Claim By Petroleum Products, Inc. as Part of Proof of Claim ("Notice of Mechanic's Lien") on May 7, 2004.

On May 13, 2004, Euler Hermes took an assignment of PPI's claims against Coal River and Hollow Mountain by Agreement of Assignment pursuant to a Credit Insurance Policy (the "Policy") PPI maintained with Euler Hermes covering PPI for risk of loss for the sale of fuel, and related materials and supplies under credit accounts such as the one PPI maintained with Hollow Mountain.  Following the Petition Date, PPI made a claim under the Policy with respect to its unpaid pre-petition credit arrearage with Hollow Mountain, thereby giving rise to the assignment.

---

[1] Euler Hermes alleges that PPI performed "services" and provided equipment in addition to providing supplies at the site, but both Hollow Mountain and Mr. Mullins deny this allegation. The nature of the "services" allegedly provided is not described.

3

Count One of the Complaint seeks declaratory judgment that Euler Hermes, by assignment, has a valid and enforceable materialman's lien[2] under the provisions of the West Virginia Code §§ 38-2-3[3], 10, 17 against all of the improvements and leaseholds of Coal River and Hollow Mountain.  It also seeks judgment that Euler Hermes, by assignment, has a valid workman's lien[4] under the provisions of the West Virginia Code §§ 38-2-31[5] against all of the

---

[2] The Court believes that materialman's lien is the clearer and more accurate terminology for the statute relied upon by the Plaintiff and will use that term in this Decision.  The term used in the Complaint is "mechanic's lien".

[3] W. Va. Code § 38-2-3 provides that:

> Every person, firm or corporation which shall furnish to any owner, for use in the erection, construction, alteration, repair or removal of any building or other structure or improvement appurtenant thereto, any materials, machinery or other equipment or supplies necessary to the completion of such building or other structure or improvement, shall have such a lien for his compensation as is mentioned in section one [§ 38-2-1] of this article.

[4] The Plaintiff refers to this as a "corporation" lien, presumably because it authorizes liens against only the property of corporations.  The Court believes that its preferred term of "workman's" lien is a more descriptive and meaningful one and will use it in the remainder of this Decision.

[5] W. Va. Code § 38-2-31 provides that:

> Every workman, laborer or other person who shall do or perform any work or labor, for an incorporated company doing business in this State, by virtue of a contract either directly with such incorporated company or with its general contractor, or with any subcontractor, shall have a lien for the value of such work or labor upon all real estate and personal property of such company; and, to the extent and value of one month's such work or labor, said lien shall have priority over any lien created by deed or otherwise on such real estate or personal property subsequent to the time when such work or labor was performed: Provided, however, that there shall be no priority of lien as against conditional sales of, or reservation of title to, machinery sold to such company; nor shall there be priority of lien as between the parties claiming under the provisions of this section.

improvements and leaseholds and all other real property and personal property of Hollow Mountain and Coal River by virtue of work PPI performed for Hollow Mountain and for a joint venture of Coal River and Hollow Mountain.  Euler Hermes alleges that these liens are a first priority against the leasehold and improvements pursuant to provisions of West Virginia Code § 38-2-17, as they attached upon the commencement of any work done by PPI.

Euler Hermes seeks in Count One a determination by this Court that the Claim constitutes a valid "lien upon the relevant properties" of Hollow Mountain and Coal River and for a determination of the competing lien priorities.  Count Two responds to Coal River's objection to its claim in the bankruptcy case and requests that this Court determine that Euler Hermes has a "valid secured and/or unsecured claim against the [Hollow Mountain and Coal River] bankruptcy estates."  Count Three of the Complaint seeks subordination of the claims of SRM, Tri-State, and Mr. Mullins to the claims of other unsecured creditors of Hollow Mountain under the principles of equitable subordination pursuant to the provisions of 11 U.S.C. § 510(c).

Coal River filed a Motion to Dismiss, in which it argued that Counts One and Two are duplicative of the Objection to Claim filed by Coal River and under the "first to file rule", these two counts should be dismissed.  Coal River further argues that Count Three should be dismissed as the plaintiff does not have standing to bring an equitable subordination cause of action against the defendant and furthermore that there had been a misjoinder of Coal River with the other defendants, so that under Bankruptcy Rule 7021 either Coal River should be dismissed or the other defendants should be dismissed from the proceeding.  SRM filed its Motion to Dismiss echoing the arguments of Coal River, except SRM alleged that there had been a misjoinder of SRM under Rule 7021 so that either SRM should be dismissed or the other

defendants should be dismissed. SRM further notes that:

> the original complaint is styled against Coal River Resources, Inc. and deals with the nature, extent and amount of a proposed [materialman's] lien. Count Three seeks equitable subordination of the claims of [SRM] in the Hollow Mountain case . . . [which] are unrelated to the Coal River case.

Hollow Mountain filed a Motion for Judgment on the Pleadings with respect to Count One and Count Three of the Complaint.  In its motion, Hollow Mountain argues that although Euler Hermes asserts that it did not perfect its lien due to the automatic stay, as a matter of law the automatic stay does not prevent a lien claimant from perfecting its purported workman's and materialman's liens in accordance with West Virginia law, citing 11 U.S.C. § 362(b)(3) and 546(b)(1).  It further argues that Euler Hermes never made application to either Coal River or Hollow Mountain to seek to equitably subordinate another creditor's claim, nor has Euler Hermes been granted leave of this Court to file Count Three, and therefore Count Three should be denied.

A Creditors' Committee was appointed in the Hollow Mountain case on April 12, 2004.  Members of the committee include Mountain State Co., Cecil I. Walker Machinery Co., Compliance Monitoring, Beaver Creek Clearing, Inc. and Nelson Brothers, LLC. Euler Hermes is not a member of the committee.  On June 10, 2004 the employment of the law firm of LeClair Ryan as counsel for the Creditors' Committee was authorized by this Court.

Tri-State Leasing included in its answer a general motion to dismiss pursuant to Bankruptcy Rule 7012 and Fed. R.C.P. 12 on the grounds that the Plaintiff failed to state a cause of action upon which relief can be granted.

All parties have had an opportunity to brief these issues and the matter is now

ready for decision.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. A complaint to determine the validity, extent and priority of liens is a "core" bankruptcy matter pursuant to 28 U.S.C. § 157(b)(2)(K).

## ALLEGED MISJOINDER

As a threshold matter, both Coal River and SRM have alleged misjoinder of parties pursuant to Rule 7021, which makes Rule 21 of the Federal Rules of Civil Procedure applicable in bankruptcy cases. Rule 21 F.R.C.P. states that

> [m]isjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

Therefore, the Adversary Proceeding will not be dismissed on this ground, but rather the Court must determine if either Coal River or SRM has been misjoined and should be dropped from the proceeding. SRM contends that

> [t]he original complaint is styled against Coal River Resources, Inc. and deals with the nature, extent and amount of a proposed mechanic[']s lien. Count three seeks equitable subordination of the claims of SRM in the Hollow Mountain case . . . [which] are unrelated to the Coal River case.

Coal River's Motion to Dismiss simply alleges misjoinder without providing any reasoning for such contention.

Bankruptcy Rule 7020 makes Rule 20 F.R.C.P. applicable in bankruptcy cases. Rule 20 states in pertinent part:

7

> All persons . . . may be joined in one action as defendants if there is
> asserted against them jointly, severally, or in the alternative, any right to
> relief in respect of or arising out of the same transaction, occurrence, or
> series of transactions or occurrences and if any question of law or fact
> common to all defendants will arise in the action. A plaintiff or defendant
> need not be interested in obtaining or defending against all the relief
> demanded. Judgment may be given for one or more of the plaintiffs
> according to their respective rights to relief, and against one or more
> defendants according to their respective liabilities.

For joinder of defendants to be proper, two requirements must be met: 1) the complaint must assert a right to relief arising out of the same transaction/occurrence and 2) a common question of law or fact must arise in the action. The Court finds that Coal River and Hollow Mountain are properly joined as the Euler Hermes's claims arose from a transaction entered into by PPI and Hollow Mountain concerning property owned or leased by Coal River. As for the common question of law or fact, Euler Hermes, by assignment, has asserted a lien against all of the improvements and leaseholds of both Coal River and Hollow Mountain based on the above transaction. The questions of law will be substantially the same for both Coal River and Hollow Mountain as to whether or not Euler Hermes holds liens by virtue of the materialman's and workman's lien statutes of West Virginia. In fact, Coal River adopted Hollow Mountain's Reply to Response of Euler Hermes to the Motion for Judgment.

The joinder of Tri-State and SRM is based on the fact that in Count Three of the complaint, Euler Hermes seeks to subordinate the claims of SRM, Tri-State and Steven R. Mullins against the bankruptcy estate of Hollow Mountain. Because all of these corporate defendants are closely-held businesses owned by Mr. Mullins, their interests in defending against the attempted subordination of their own claims against the Hollow Mountain estate ought to be substantially the same, and the claim for equitable subordination arises out of the

same transaction as referenced in Count One of the Complaint.  For the sake of judicial economy and because the requirements of Rule 20 F.R.C.P. have been met, the Court finds that all parties asserting misjoinder have been properly joined.

## COUNTS ONE AND TWO

*"First to File" Rule*

Coal River and SRM urge that these Counts should be dismissed as duplicative of Coal River's objection to Euler Hermes's claim filed in the case under the "first to file" rule.  The "first to file" rule is a well-established principle of judicial economy and federal comity providing that when duplicative actions are filed in two *different* federal *courts*, the first filed should generally proceed to judgment, although district courts generally have discretion to dispense with the rule when equity so requires. *Baker Energy, Inc.  v. Girkin Dev., L.L.C.*, No. 05-1002-T/an, 2005 U.S. Dist. LEXIS 8222 (W.D. Tenn. April 8, 2005).  The Fourth Circuit has not explicitly adopted this rule, but the Court finds this to be irrelevant as the rule does not apply to the current situation.  The rule is designed to promote judicial economy and to avoid rulings which may "trench upon the authority of sister courts", thereby avoiding piecemeal resolution of issues that call for a uniform result.  *Cadle Co. v. Whataburger of Alice, Inc*., 174 F.3d 599 (5th Cir. 1999).  There being no "sister court" involved since the matters of both the objection to claim and the instant adversary proceeding are both before this Court and the Court having found no "first to file" rule dealing with duplicative matters before the *same* court, SRM and Coal River's Motion to Dismiss Counts One and Two on such particular ground will be denied.

*Cause of Action Against Steven R. Mullins Excavating, Inc. and/or Tri-State Leasing Corp.*

SRM asserts in its Motion to Dismiss that neither Count One nor Count Two states a cause of action against SRM. Tri-State asserts generally that the adversary proceeding ought to be dismissed for failure to state a cause of action upon which relief can be granted. The Court finds these arguments well taken as to Counts One and Two as to these two defendants. Count One deals solely with whether or not Euler Hermes, by assignment, has a valid and enforceable materialman's and/or workman's lien against Coal River and/or Hollow Mountain. This determination does not involve any factual or legal allegations against either SRM or Tri-State. Likewise, Count Two deals solely with the validity of the claim filed by Euler Hermes in the Coal River bankruptcy estate. This determination also does not involve any factual or legal allegations against either SRM or Tri-State. Accordingly, Counts One and Two will be dismissed as to defendants SRM and Tri-State.

*Cause of Action Against Hollow Mountain Resources, Inc.*

Tho only remaining outstanding motion as to Count One is Hollow Mountain's Motion for Judgment on the Pleadings for failure to state a claim upon which relief may be granted pursuant to Bankruptcy Rule 7012(b). "On a motion to dismiss, all facts must be construed in the light most favorable to the non-moving party and the allegations of the Complaint are taken as true." *In re Channelinx, Inc*., 317 B.R. 694, 697 (Bankr. D.S.C. 2004), citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130 (4th Cir. 1993) and *Martietta Corp. v. Int'l Telecommunications Satellite Org.,* 991 F.2d 94 (4th Cir. 1992). As noted above, Count I of the Complaint seeks to determine the existence, validity, and enforceability of materialman's and workman's liens claimed by Euler Hermes by assignment from PPI for alleged services, equipment and supplies provided to Hollow Mountain at its Boone County, West Virginia

operations. Euler Hermes alleges that the supplies provided by PPI were utilized in connection with construction, alteration and maintenance of improvements made by Hollow Mountain on property owned or leased by Coal River and constituted work performed for an incorporated company in West Virginia. Hollow Mountain argues that PPI never filed the notices required by West Virginia Code §§ 38-2-3, -10 and -17 and §§38-2-31, -32 and -33. Under W. Va. Code § 38-2-3 (as quoted above at footnote # 3), any corporation furnishing any owner materials, machinery or other equipment or supplies necessary for use in the erection, construction, alteration, repair or removal of any building or other structure or improvement shall have a lien for its compensation. Under W. Va. Code § 38-2-31, (as quoted above at footnote #5) every workman, laborer or other person[6] who shall perform any work or labor for an incorporated company doing business in West Virginia by virtue of a contract with that company or with its general contractor or subcontractor shall have a lien for the value of such work upon all real estate and personal property of such company. Assuming facts in a light most favorable to the Plaintiff, Euler Hermes, by assignment, had, at the time of filing, a workman's lien under the provisions of this W. Va. Code section by virtue of the fact that PPI performed services for Hollow Mountain continuing until February 11, 2004.

    As for the materialman's lien provided for by § 38-2-3, the West Virginia Code requires that claimant perfect the lien by filing a notice of such lien with the office of the clerk in the county wherein the property is situated within 100 days from the date the claimant ceased to

---

[6] This has been held to include corporate persons and not be limited to individual persons. *Wetzel & T. Ry. Co. v. Tennis Bros. Co.,* 145 F. 458, 461-63 (4th Cir. 1906).

furnish the material or machinery or other equipment. W. Va. Code § 38-2-10.[7] A similar perfection requirement exists for the workman's lien provided for by § 38-2-31. W. Va. Code § 38-2-32 requires that a workman's lien will be discharged unless the claimant perfect the lien by filing a notice with the county clerk of the lien containing the amount due him within 90 days of the date the workman ceased to work.[8] Hollow Mountain argues that because PPI failed to file such notices in Boone County, West Virginia, the asserted liens have now been discharged. Euler Hermes admits that PPI never filed the notices, but alleges that it was prevented from doing so by virtue of the automatic stay after the Debtors filed their cases on March 8, 2004.  11 U.S.C. § 362(a) provides in pertinent part that:

> (a) except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of --

---

[7] W. Va. Code § 38-2-10 provides:

> For the purpose of perfecting and preserving his lien, every materialman or furnisher of machinery or other necessary equipment, under a contract with the owner, as mentioned in section three [§ 38-2-3] of this article, shall cause to be recorded in the office of the clerk of the county court of the county wherein such property is situate, within one hundred days from the date when he shall have ceased to furnish material or machinery or other necessary equipment, a notice of such lien, which notice shall be sufficient if in form and effect as that provided in section eight [§ 38-2-8] of this article.

[8] W. Va. Code § 38-2-32:

> Such lien shall be discharged unless the person desiring to avail himself thereof, within ninety days from the time he shall have ceased to work or labor for such incorporated company or for such contractor, shall file with the clerk of the county court of the county in which such work or labor was performed, or in which the principal office, works, real estate or personal property of such incorporated company is situated, a notice of lien containing the amount due him after allowing all credits, which notice shall be sworn to by the person claiming such lien, or by someone in his behalf.

> (5) any act to create, perfect or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case . . .

Euler Hermes argues that the plain language of this Code section would lead one to reasonably expect that an act to create or perfect a materialman's lien under state law would violate the automatic stay and not being aware of any authority from the Southern District of West Virginia or any higher Court interpreting the interplay between 11 U.S.C. § 362(a) and the West Virginia materialman's lien statute that specifically advises a party that filing a notice of materialman's lien in the applicable West Virginia County would not violate the stay, PPI filed a Notice of Lien[9] in this case pursuant to 11 U.S.C. § 546(b)(2).[10] Hollow Mountain argues that because neither seizure nor the commencement of an action is necessary to perfect a materialman's or workman's lien under the West Virginia Code, the liens could not have been perfected pursuant to § 546(b)(2) of the Bankruptcy Code. Euler Hermes argues that perfection would require an "action" pursuant to W. Va. Code § 38-2-34 which provides in pertinent part:

> Unless a suit in chancery to enforce any lien authorized by this article is commenced within six months after the person desiring to avail himself thereof shall have filed his notice in the clerk's office, as hereinbefore provided in this article, such lien shall be discharged . . .

---

[9] Such Notice of Lien Perfection was filed with this Court May 7, 2004 and docketed as entry number 74 in the case.

[10] 11 U.S.C. § 546(b)(2) states that:
> If -- (A) a law described in paragraph (1) [such as a materialman's or workman's lien] requires seizure of such property or commencement of an action to accomplish such perfection, or maintenance or continuation of perfection of an interest in property; and (B) such property has not been seized or such an action has not been commenced before the date of the filing of the petition; such interest in such property shall be perfected, or perfection or such interest shall be maintained or continued, by giving notice within the time fixed by such law for such seizure or such commencement.

Euler Hermes argues that because of this provision, it was forced to rely on the statutory "safe harbor" of perfection provided by § 546 of the Bankruptcy Code. The Court disagrees with this argument. The filing of the notice of lien is necessary to *perfect* the lien while the filing of the suit in chancery is necessary to *enforce* it. Section 546 does protect Euler Hermes from failure to file a chancery suit, clearly "the commencement of an action" within the meaning of the statute, within the required time, but it does not excuse the failure to file the necessary notice in the clerk's office of a claim of lien.

Euler Hermes argues that even if the "safe harbor" provisions of § 546 are not applicable, PPI substantially complied with the West Virginia statute by filing the Notice of Lien with this Court. West Virginia case law does set forth a standard of substantial compliance for materialman's liens. *Gray Lumber Co. v. Devore*, 112 S.E.2d 457, 460 (W. Va. 1960). The form of the notice need not be followed precisely but the substance of the notice provided by such statute must be contained in such notice and the effect must be the same. *Id.* The West Virginia statute requires that notice be filed with the clerk of the county in which the property subject to the dispute lies and the *Gray Lumber* decision makes no suggestion that such requirement is anything other than "essential." *Id.* An earlier case concluded that a party substantially complied with this legislative requirement by filing the notice with the county clerk's office, despite the fact that the clerk's office failed to "spread it" on the record but simply placed an abstract of the claim on the mechanic's lien docket. The Supreme Court of Appeals of West Virginia adopted the rule that "if the notice is properly made out and filed for **record** with the proper recording office, it will be good as between the parties, although the officer fails to **spread it on the record** according to law." *Bailey Lumber Co. v. General Construction Co.*,

101 W. Va. 567, 577, 133 S.E. 135, 139 (1926)(emphasis in original).  Later that same year the same Court upheld a claim of mechanic's lien which had been "properly recorded" but named the parent corporation as the owner rather than the subsidiary which was the actual record title owner of the property where the same individual was the president and general manager of both corporations.  *Doss v. Gulf Smokeless Coal Co.*, 102 W. Va. 470, 475, 135 S.E. 575, 577 (1926).  Euler Hermes cites two cases in support of its contention that the filing with the bankruptcy court constitutes substantial compliance.  The first case is *Kendall v. Martin*, 67 S.E.2d  42 (W. Va. 1951), which held that the basis for any lien is the notice to the owner by the contractor that the contractor has furnished such material of services.  Unfortunately, the issue in that case was the adequacy of the notice to the owner, not the filing of the notice with the county clerk.  In that case the claimant timely filed the notice with the county clerk.   The second case deals with the same issue - adequacy of the notice to the owner, not whether or not the claimant complied with the requirement of filing with the county clerk.  *Dickerson Lumber Co. v. Paul*, 122 S.E. 270 (W. Va. 1924).  The language of the West Virginia statute concerning the filing of a notice of mechanic's or materialman's lien requires that such notice "be recorded in the office of the clerk of the county court of the county wherein such property is situate".  W. Va. Code § 38-2-10 (see footnote #6 for the full section).  The most reasonable explanation for such requirement is a concern that a filing be made in the clerk's office where a title search on the property would be conducted.  Accordingly, a filing made in another clerk's office, in this case the Bankruptcy Court, would not provide any notice to one checking the title to the property that there is an outstanding claim of a mechanic's or materialman's lien against such property.  The Court believes that the filing of a notice, even in the greatest good faith, in any office other than the

one prescribed by the West Virginia legislature cannot constitute substantial compliance with such requirement, even giving such requirement a "liberal construction". *Badger Lumber Co., Inc. v. Redd*, 213 W. Va. 453, 456, 583 S.E.2d 76, 79, fn. #3 (2003). *See Houston Lumber Co v. Wetzel & Tyler Railway Co.*, 69 W. Va. 682, 72 S.E. 786 (1911)(one of the requisite allegations in a chancery suit to enforce a mechanic's lien is that the notice was timely filed in the proper clerk's office). Plaintiff's counsel has not cited to the Court, nor has the latter found through its own research, a single case holding that the filing of a notice in some place other than the appropriate local county clerk's office was substantial compliance with the statutory requirement.

The wording of the statute regarding notice of a workman's lien is even more compelling as it expressly provides that "[s]uch lien shall be discharged" unless the notice is filed as specified in the statute. It has been held that even the appointment of a receiver for the employer bank did not excuse the claimant from filing the requisite notice in the manner required by the statute.

> If there is nothing to prevent [the filing of a notice of lien under Code § 38-2-32] being done, then the plaintiff below, under the mandatory terms of the statute, was obligated to do it in order to prevent the discharge of his lien, and his bill of complaint should have averred the filing of the notice of lien.

*Charter v. Doddridge County Bank*, 117 W. Va. 742, 749, 188 S.E. 486, 488-9 (1936).

West Virginia law provides that workman's and materialman's liens have priority over any lien created by deed or otherwise subsequent to the time the work was performed or labor, material, machinery or equipments began to be furnished, although the priority of the workman's lien is limited to one month's labor. W. Va. Code §§ 38-2-17, -31. *See also Reconstruction Fin. Corp. v. Sun Lumber Co.*, 126 F.2d 731 (4th Cir. 1942)(decided under the

Act)(determining priority of wage claimants against the bankruptcy trustee). These statutory provisions clearly permit "perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection", 11 U.S.C. 546(b)(1)(B), thereby allowing the filing of the notices of lien to fall into the exception to the automatic stay as provided in 11 U.S.C. § 362(b)(3). Because under 11 U.S.C. § 362(b)(3) Hollow Mountain's bankruptcy filing did "not operate as a stay" against the perfection or maintenance of perfection of a materialman's or workman's lien under West Virginia law, the failure to file the requisite notices meant that any rights to such liens were lost. Accordingly, Hollow Mountain's Motion will be granted.

## COUNT THREE

Count Three of the Compliant seeks to subordinate the claims of SRM, Tri-State and Steven R. Mullins against the estate of Hollow Mountain to the claim of Euler Hermes under principles of equitable subordination pursuant to 11 U.S.C. § 510(c). Coal River, SRM and Hollow Mountain all move to dismiss this Count on the ground that Euler Hermes lacks standing to assert such a claim. The case law on this issue of standing varies. *See In re Granite Partners, L.P.*, 210 B.R. 508, 514 (Bankr. S.D.N.Y. 1997) (the remedy of equitable subordination is not limited to the trustee and one creditor may seek to equitably subordinate another creditor's claim to his own); *In re Vitreous Stell Prods Co,* 911 F.2d 1223 (5th Cir. 1990) (unsecured creditor does not have standing); and *Variable-Parameter Future Dev. Corp. v. Comerica Bank-California*, 228 B.R. 449 (Bankr. N.D. Cal 1998) (question turns on whether the claim is one of the estate or one held by the creditor, general unsecured creditor had standing when DIP or creditors committee failed to act).

Hollow Mountain cites *Rooke v. Reliable Home Equipment Co.*, 195 F.2d 667, 668 (4th Cir. 1952) as authority that "a general creditor has no right to contest another creditor's claim . . . unless upon application the trustee has refused to do so and the district court has authorized the creditor to proceed in the trustee's name." 195 F.2d at 668. The facts of that case, brought under the Bankruptcy Act, were that the trustee in bankruptcy brought an action to avoid and recover from the defendant certain pre-petition transfers alleged to have been fraudulently or preferentially made. This action was unsuccessful before the bankruptcy referee, who refused to allow the trustee to appeal the decision to the District Judge. Two general creditors then took it upon themselves to appeal this decision to the District Judge and then to the Court of Appeals, which firmly rejected their standing to do so. Since the creation of the Bankruptcy Code and enactment of § 510(c) the Fourth Circuit has not definitively ruled as to whether or not a single creditor has standing to assert a claim for equitable subordination and the Court has been unable to find any case from any court within the Fourth Circuit containing any discussion of this issue. It does appear, however, that individual creditors have been successful in recent years within the jurisdictions covered by the Fourth Circuit in at least having an equitable subordination claim heard on its merits, but these decisions offer only very limited help regarding the issue before this Court. A lien creditor against a particular parcel of real property owned by the debtor successfully obtained a declaration that the purported claim of a judgment lien held by an affiliate of the debtor should be subordinated to its lien pursuant to 11 U.S.C. § 510(c) in *C.F. Trust, Inc. v. DEP, Inc. (In re DEP, Inc.)*, No. 95-14438-SSM, 1997 Bankr. LEXIS 2383 (Bankr. E.D. Va. Oct. 31, 1997). The opinion gives no indication that the plaintiff's standing was challenged by the other lien creditor and it seems axiomatic that any creditor having a lien

against a particular property has the right to challenge the lien claimed by a competing creditor. Whether or not an unsecured claim against a bankruptcy estate should be subordinated to the payment of some or all of the other general claims against that estate is a different issue. Individual creditors had standing to pursue an equitable subordination claim pursuant to the debtor's Chapter 11 Plan and Confirmation Order in *Miller v. ChanneLinx, Inc. (In re ChanneLinx, Inc.)*, 317 B.R. 694 (Bankr. D.S.C. 2004), but the opinion made clear that such right was accorded to them under the provisions of the Plan and the plaintiffs' efforts to advance other claims were denied as being precluded by the same provisions. Shareholder creditors of a debtor succeeded in an equitable subordination claim in *Goode v. Hagerty (In re Systems Impact, Inc.)*, 229 B.R. 363 (Bankr. E.D. Va. 1998), but there the plaintiffs also sought to advance a claim of subordination of other insider claims pursuant to an express pre-bankruptcy resolution which had been adopted by the debtor's board of directors and their standing to advance a § 510(c) equitable subordination claim seems not to have been challenged and certainly was not addressed in the opinion. In the absence of guidance from the Fourth Circuit of Appeals or the District Court on this point, the Court need go no further than the circumstances of the case before it to resolve the issue of standing. In this case there is an official Unsecured Creditors' Committee which as been appointed. This Committee has been active and has retained counsel. The Court understands that there is active discussion among the affiliated Debtors and their creditor constituencies concerning the issue of subordination of claims. The Complaint makes no allegation that either Hollow Mountain or its Creditors' Committee has been requested to assert a subordination claim or that either have indicated its unwillingness to do so. If any individual creditor were free to assert a § 510(c) subordination claim against another creditor's

general unsecured claim against a common bankruptcy debtor, there would appear to be a danger of either multiple assertions and litigation of the same essential claim, with possibly differing results, or of the right to advance such a claim being determined by which party in interest first filed a motion or adversary proceeding seeking such a result. There is no allegation that the claims of Hollow Mountain's affiliates and owner are specially inequitable as to Euler Hermes vis-a-vis any of its other creditors. Under these circumstances noted, the Court concludes that the better rule is that a general unsecured creditor does not have standing to assert in its own right a § 510(c) subordination motion or proceeding against another unsecured claim when the authorization of the Court to do so has not been sought and obtained after a hearing and notice to all other creditors and parties in interest. Accordingly, the Motion to Dismiss Count Three of the Complaint will be granted, subject to the Plaintiff having leave of court to file an amended complaint within twenty days of the entry of this order.

This 25th day of July, 2005.

*William F. Stone, Jr.*

UNITED STATES BANKRUPTCY JUDGE